ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                    │
│ DATE FILED: _11/22/21_               │
└─────────────────────────────────────┘
```

LOKAI HOLDINGS, LLC,

                          Plaintiff,

          - against -

BRETT SUNDBERG, RACHAEL SUNDBERG, AND
DOES 1-10,

                          Defendants.

21 Civ. 04466 (LLS)

OPINION & ORDER

Plaintiff Lokai Holdings, LLC brings claims under the Lanham Act and New York law against defendants Brett Sundberg, Rachael Sundberg and Does 1-10 (collectively, "defendants") for their unauthorized sale of allegedly counterfeit copies of plaintiff's trademarked bracelets.

Defendants move to dismiss the claims against them under Federal Rules of Civil Procedure 12(b)(2),(3) and (6). Alternatively, defendants move to transfer the matter to the United States District Court for the District of Utah, pursuant to 28 U.S.C. § 1404.

For the reasons stated below, defendants' motion to transfer is granted.

**BACKGROUND**

According to the Complaint, plaintiff is a manufacturer and seller of a variety of unique bracelets, known as "Lokai Bracelets". Compl. ¶¶ 13-16. Plaintiff owns valid trademark registrations for several of the Lokai bracelets. Id. ¶¶ 16-24. Defendants, through an online storefront called "PEYTEYBUG", available on the online marketplace "JANE.COM", offer for sale

-1-

unauthorized copies of plaintiff's Lokai bracelets. Id. ¶¶ 31-
33, 46, 56-60.

Plaintiff discovered the allegedly infringing bracelets on
defendants' website around December of 2020, and sent a letter
to the online marketplace, JANE.COM, requesting the counterfeit
goods be removed from the site. Id. ¶¶ 39-40. A representative
from the website responded to plaintiff's request, explaining
that the products were removed, and providing plaintiff with
PEYTEYBUG's contact information. Id. ¶¶ 41-42.

On December 28, 2020, plaintiff's counsel sent defendants a
cease-and-desist demand. Id. ¶ 42. Since that time, defendants
stopped selling the counterfeit products, and subsequently
reported to plaintiff the sales figures of the infringing
bracelets, although defendants failed to report to plaintiff's
counsel all colors of the bracelets offered on the storefront
and how long the bracelets have been offered. Id. ¶ 43-50.
According to defendants, the sale of the allegedly infringing
bracelets only generated in total $2,237.87 in profit. See Df.
Br. at ¶ 11.

After the Complaint was filed, the parties attempted to
settle the matter, but discussions between the parties broke
down when defendants ceased to provide the requested sales
information and became non-responsive. Compl. 49.

Defendants now move to dismiss the claims against them for
improper venue, lack of personal jurisdiction and failure to

state a claim, or to transfer the case to the District of Utah.

The case should be transferred to Utah.

## DISCUSSION

### 1.

Defendants argue that their out-of-state associations make venue improper in this District. In this case, defendants operate the PEYTEYBUG business from their home in Utah. See Df. Br. at ¶ 2, Ex. A at ¶ 3. PEYTEYBUG sells its women's and children's fashion accessories solely through the online marketplace JANE.COM. Df. Br. at ¶¶ 2, 4, Ex. A at ¶3. Defendants do not maintain any business offices, brick and mortar locations, or distribution centers in New York or anywhere else in the world. Df. Br. at ¶ 4, Ex. A at ¶ 5. PEYTEYBUG has no employees besides Defendant Rachael Sundberg, and Ms. Sundberg has never traveled to New York for purposes of conducting business for PEYTEYBUG. Df. Br. at ¶ 8, Ex. A at ¶¶ 6, 9.  Defendants do, however, promote and advertise the bracelets in New York through operation of the website, which is accessible to people in New York.

Although venue in this District is proper, the Court may, "For the convenience of parties and witnesses, in the interest of justice, [] transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

28 U.S.C. § 1404(a) gives district courts wide latitude to

-3-

decide whether to transfer venue. See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013). "In deciding motions to transfer, courts inquire, first, whether the action could have been brought in the transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's discretion." Id. (internal citations and quotation marks omitted).

Under 28 U.S.C. 1391(b)(1), this action could have been brought in the District of Utah, since all defendants reside in Utah. See 28 U.S.C. 1391(b)(1) ("A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").

The second step of the 1404(a) analysis invites the Court to balance nine factors to determine whether transfer is a valid exercise of discretion. The factors the Court typically considers include: "(1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice." Freeplay Music, LLC v. Gibson Brands,

Inc., 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016).

On balance, those factors favor transfer to Utah.

2.

"The convenience of witnesses is an important consideration, and has often been described as the single most important § 1404(a) factor." Everlast, 928 F. Supp. 2d at 743. In a trademark infringement action, the "most critical witnesses may be those officers and employees who were involved in the ... sale of the [allegedly] infringing products.". ESPN, Inc. v. Quiksilver, Inc., 581 F.Supp.2d 542, 548 (S.D.N.Y.2008) (internal citation and quotation marks omitted).

Here, defendants have demonstrated that the pertinent witnesses are in Utah. Rachael Sundberg —the individual accused of selling the infringing products— lives in Utah, with her husband, and is the chief, if not sole, employee of PEYTEYBUG, other than her children, who assist, and a family friend located in Utah who "occasionally helped out". See Df. Br. at 11; Ex. A at ¶¶ 4-6. Plaintiff does not meaningfully contest those facts. Therefore, the convenience of witnesses favors of transfer.

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." Everlast, 928 F. Supp. 2d at 744 (S.D.N.Y. 2013)(citation omitted). A motion to transfer "should not be granted if all transfer would accomplish is to shift the inconvenience from one

party to the other." Guardian Life Ins. Co. of Am. v. Hernandez, No. 11 CIV. 2114 SAS, 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011).

Defendants have shown that a transfer would not merely shift the inconvenience from one party to the other: defendants are individuals, not a large corporation. They state that they have limited means and resources to litigate this matter, especially where the cost of traveling to New York for the purpose of litigation may exceed the value of actual damages in the case. See Df. Br. at 12.

3.

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." Smart v. Goord, 21 F.Supp.2d 309, 316 (S.D.N.Y.1998) (citation omitted). This factor weighs heavily in favor of transfer from the district when a party "has not shown that any of the operative facts arose in the Southern District of New York." Dr. Boy GmbH v. Nationwide Ins., No. 96 Civ. 3217(AGS), 1996 WL 350699, at *2 (S.D.N.Y. June 25, 1996).

Plaintiff asserts that New York is the locus of operative facts since the "facts concerning the brand and intellectual property" are in New York and some of the allegedly infringing items were ordered from and shipped to New York (albeit a nominal amount equaling roughly 114 of 8,592 products, see Ex. A ¶ 12-13). Plaintiff argues that the "majority" of courts in this

District have held that in cases where sales have been made in the district, the initially chosen forum is the locus of operative facts, even where sales have been made in other districts (as they have here, see Ex. A ¶ 13). See Pl. Br. at 22-23 (citing Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006)("In trademark infringement cases, courts in this District have found that the locus of operative facts weighs in favor of maintaining the original venue where the defendant sells the allegedly infringing products in that forum.")).

Several courts in this District have found that holding "not persuasive", and instead held that if "there are roughly equivalent sales of an allegedly infringing product in multiple districts, each such district has a roughly equivalent claim to being the locus of operative facts." CYI, Inc. v. Ja-Ru, Inc., 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012); accord Enigma Software Grp. USA, LLC v. Malwarebytes Inc., 260 F. Supp. 3d 401, 410-11 (S.D.N.Y. 2017)("The Court declines to find that the location of consumers favors New York where only a small fraction of consumers of the product at issue bought the product issue in, or are located in, New York."); Alpha Indus., Inc. v. Alpha Clothing Co. LLC, No. 21 CIV. 87 (KPF), 2021 WL 2688722, at *7-8 (S.D.N.Y. June 30, 2021)(" While the Court recognizes that sales did occur in this District . . ., that consideration is accorded 'substantially diminished weight' in light of Defendants'

submission that its sales were nationwide.).

Based on the sales data before the Court, 1.33 percent of the total accused product sales occurred in New York, 3.4 percent occurred in Utah, and the remainder occurred in other states. Df. Br., Ex. A ¶ 13. Given those facts, there are a number of districts with a "roughly equivalent claim" to being the locus of operative facts. Viewed in conjunction with the other facts concerning defendants' allegedly infringing activities, the locus of operative facts favors transfer to Utah, where defendants ordered the allegedly infringing goods, where they operate the PEYTEYBUG website, and from where the bracelets are packaged and shipped to purchasers. See Cartier v. D & D Jewelry Imports, 510 F. Supp. 2d 344, 346 (S.D.N.Y. 2007)(locus of operative fact weighed in favor of transfer from New York where defendants were located in California, its website was operated out of California, and the allegedly infringing items were shipped from California); see also Freeplay Music, LLC v. Gibson Brands, Inc., 195 F. Supp. 3d 613, 619 (S.D.N.Y. 2016)("[E]ven though some operative facts occurred in New York where the copyrights are owned and where the alleged injury occurred, the Court is persuaded that most of the operative facts weigh in favor of transfer to Tennessee.").

4.

For the reasons described in connection with the convenience of the parties, the relative means of the parties

favors Utah. Defendants are individuals, not corporations, who have declared that defendant Rachael Sundberg is a stay-at-home mom who only generated $2,237.87 in profits from the sale of the accused products. See Df. Br., Ex. A. ¶¶ 3, 12.  Plaintiff, on the other hand, appears to be a multi-million-dollar corporation (see Izen Decl. at ¶ 15, stating "To date, Lokai has generated millions of dollars in revenue . . . ") and ¶ 16, discussing plaintiff's donation of $8 million, comprising 10% of its net profits) and has made no analogous claim of financial harm in pursuing its claims in Utah.

5.

While defendants' business records and information regarding the purchase and sale of the allegedly infringing products are located in Utah, see Df. Br. at 11-12, "the location of documents and records is not a compelling consideration when records are easily portable." Astor Holdings, Inc. v. Roski, No. 01 CIV. 1905 (GEL), 2002 WL 72936, at *12 (S.D.N.Y. Jan. 17, 2002). Therefore, this factor is neutral.

6.

Under Rule 45 of the Federal Rules of Civil Procedure, a district court generally can only issue a subpoena that would compel a non-party witness to travel within 100 miles of the state in which the witness resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(A). However, "[w]here there is no indication that non-party

-9-

witnesses will refuse to appear, courts will consider the availability of process to compel the attendance of witnesses a neutral factor." See Alpha Indus., Inc., 2021 WL 2688722, at *9 (internal citations omitted).

Neither Plaintiff nor Defendants have concretely identified particular non-party witnesses who are unwilling to testify.[1] Even if a witness declines to testify, "deposition testimony is a viable alternative." NBA Properties, Inc. v. Salvino, Inc., No. 99 CIV. 11799 AGS, 2000 WL 323257, at *8 (S.D.N.Y. Mar. 27, 2000). This factor thus has little bearing on the Court's determination.

7.

While a plaintiff's choice of forum "is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer", Royal & Sunalliance v. British Airways, 167 F.Supp.2d 573, 576 (S.D.N.Y.2001), that choice "merits less deference where the connection between the case and the chosen forum is minimal." Everlast, 928 F. Supp. 2d at 748 (S.D.N.Y. 2013) (internal citation and quotation marks omitted); see also D'Anton Jos, S.L. v. Doll Factory, Inc., 937 F. Supp. 320, 323 (S.D.N.Y.

---

[1] Defendants Brief states, "Defendants are located in Utah, as are (likely unwilling) witnesses associated with Defendants", and their Reply states, "But to the extent plaintiff intends to call trial witnesses that include employees of Jane, Brett (who should not be named as a party at all), or Rachael's family friend . . . these witnesses will all presumably be unwilling to testify voluntarily at trial . . . .". See Df. Br. at 13; Df. Reply Br. at 8. This is not concrete evidence of a non-party witnesses' unwillingness to testify.

-10-

1996) ("[A]lthough a plaintiff's choice of forum is generally given substantial weight, this presumption does not apply in cases such as this one where there is little material connection between the chosen forum and the facts and issues of the case.").

In this case, plaintiff, who maintains its principal address in New York (Compl. ¶ 5), chose to bring the action in the Southern District of New York, presumably since this District is the most convenient for Lokai. However, given the above stated facts showing that New York lacks a strong, material connection to the cause of action, this factor does not significantly shift the balance in favor of retention.

8.

Utah is equally competent to hear defendants' federal Lanham Act claims. Plaintiff does raise two New York state law causes of action, which favors retaining the case in the Southern District of New York. See NBA Properties, Inc., 2000 WL 323257, at *9. ("Where, as here, there are state law claims, the forum's familiarity with governing law supports retention of the action.") (internal citations and quotation marks omitted). This factor thus weighs slightly against transfer. See ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 550-51 (S.D.N.Y. 2008) (noting that this is one of the least important factors).

**CONCLUSION**

Defendants' motion to transfer to Utah is granted.

So Ordered.

Dated:     New York, New York
           November 22, 2021

                                        *Louis L. Stanton*
                                        Louis L. Stanton
                                           U.S.D.J.